### Stanley Fox v. The State.

No. 6697.   Decided May 31, 1923.

Rehearing granted June 29, 1923.

#### 1.—Murder—Reproduction of Testimony—Predicate.

Where it was sufficiently shown that one of the witnesses who had testified before had since died, and that two of the other witnesses who had testified before resided in another State beyond the jurisdiction of the trial court at the time of the reproduction of their testimony, this constituted a sufficient predicate for the reproduction of their testimony at a former trial and the admission of the same in evidence.

#### 2.—Same—Charge of Court—Submission of Facts.

Where, upon trial of murder, it is shown by the evidence that there were four men in the room where the homicide occurred, that two of them were shot and killed, and that the commission of the homicide lay between one Boone and the defendant, the charge of the court that if some person other than the defendant shot and killed deceased, or if the jury had a reasonable doubt thereon to acquit defendant, was sufficient.

#### 3.—Same—Circumstantial Evidence—Charge of Court.

Where a comparison of the main charge and the requested charge on circumstantial evidence showed no substantial difference there was no error in refusing the requested charge.

#### 4.—Same—Circumstantial Evidence—Change of Court—Rule Stated.

When a charge upon circumstantial evidence is otherwise sufficient it need not in express terms state to the jury that the case is one of circumstantial evidence. Following Burkhalter v. State, 184 S. W. Rep., 321, and other cases.

5.—Same—Rehearing—Insufficiency of the Evidence—Circumstantial Evidence.

Where, upon appeal from a conviction of murder resting upon circumstantial evidence, the evidence did not demonstrate defendant's guilt to that moral certainty required by law, the judgment must be reversed and the cause remanded.

Appeal from the Criminal District Court of Harris. Tried below before the Honorable C. W. Robinson.

Appeal from a conviction of murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Thomas H. Ball,* for appellant. Cited on question of predicate, Wingo v. State, 229 S. W. Rep., 859.

On question of charge of court as to who killed deceased, Burkhalter v. State, 184 S. W. Rep., 221; Markham v. State, 233 id., 677.

*R. G. Storey,* Assistant Attorney General, and *E. T. Branch,* District Attorney, for the State.

On question of reproduction of testimony, Brent v. State, 89 Texas Crim. Rep., 544; Crook v. State, 27 Texas Crim. App., 241.

LATTIMORE, JUDGE.—Appellant was convicted in the criminal District Court of Harris County of the offense of murder, and his punishment fixed at confinement in the penitentiary for five years.

The chief complaint of appellant as presented to this court relates to the admissibility of the reproduction of the testimony of certain witnesses who appeared on behalf of the State at the examining trial of appellant in 1918, and whose testimony, upon predicates hereafter discussed, was admitted upon the instant trial.

As to one of said witnesses, a Mr. Belser, it was admitted that he was dead at the time of this trial, and the other requisites of a predicate being fully shown, such as that he was duly sworn as a witness at said preliminary trial, and that appellant was present when said testimony was given, and that an opportunity was given him to cross-examine the witness,—there would seem no doubt under Art. 834 of our Code of Criminal Procedure of the admissibility of the testimony of this witness as reproduced. A Mr. Higgins also testified on said examining trial, stating at the time that his home was in Chicago, Illinois, and that he was in the air service, stationed temporarily near Houston. Letters from Mr. Higgins of various dates were produced as a part of the predicate laid, the last one being of date June, 1921, accompanying which letter was an affidavit of date June 20, 1921, sworn to before a notary public of Cook county, Illinois, asserting the then residence of the witness in the State of Illinois. It was shown by competent evidence that the signatures to the affidavit and to the letters were in the same hand-

writing and apparently made by the same person, as the signature attached to the testimony of W. J. Higgins given on said examining trial.    Mr. H: H. Sanders also testified upon said examining trial and stated at the time that his home was in Indiana.    A number of letters were produced in making out. a predicate for the reproduction of his testimony, same being apparently answers to letters written to him by the district attorney's office and addressed to the home town of said witness in Indiana.    The latest of said letters was in March, 1921, from which it appeared that said witness was employed as a traveling salesman but that his business brought him nowhere in the neighborhood of Texas, and that it would be impossible for him to be present within this State and testify on this trial. The handwriting of Mr. Sanders in said letters and as appearing in his signature to the examining trial testimony, was also testified to as identical by witnesses.

Under the predicates above mentioned we discover no error in permitting in evidence testimony given by each of said witnesses at the preliminary trial of appellant for this homicide.    The matters of procedure relative to the reproduction of this character of testimony have been made the subject of discussion in numerous decisions of this court, many of which appear in Branch's Ann. P. C., Secs. 76-77; and Vernon's C. C. P., pp. 768-770, and are collated on pages 8 and 9 of Vernon's C. C. P.    The matter to some extent was discussed by us in Brent v. State, 89 Texas Crim. Rep. 544.    Appellant cites Wingo v. State, 89 Texas Crim. Rep., 162, as supporting his contention in this matter.    We have examined anew this comparatively recent opinion and observe that after summing up the evidence adduced as a predicate for the reproduction of the testimony of the absent witness, Mr. Justice Hawkins, speaking for the court in that case, used the following language:

"We are of opinion that appellant's contention that no proper predicate was laid for the reproduction of the testimony of this witness is sound.    When you take all of the testimony introduced for the purpose of laying a predicate and sum it up, it simply amounts to the fact that the witness Woodall was not present at the trial, and no one knew where he was or why he was absent.    There is no testimony from which the trial court, or this court, can conclude that he was out of the state."

There does not appear to be any similarity in the predicate under discussion in the Wingo case, with those laid in the instant case. There appears to be no discussion of the principles involved in the contention, in the Wingo case, and the only holding is that the facts shown did not authorize the reproduction of the testimony of the absent witness.    The proof adduced as constituting the predicates in the instant case seems to justify the conclusion that both Mr.

Higgins and Mr. Sanders resided out of the State of Texas, and that they were beyond the jurisdiction of the trial court at the time of the reproduction of their testimony. We do not deem it necessary to discuss any seeming conflict between the right of appellant to be confronted with the witnesses against him, and the right of·organized society to have its chance to present its side of the case, it having been often held that where the accused has been once confronted in a court of competent jurisdiction by such witnesses and full privilege there given him of cross-examination, the constitutional guarantee has been carried out.

There is complaint directed at that part. of the charge of the court which is as follows:

"If you find from the evidence that some person. other than the defendant shot and killed Pat Walsh and G. V. Smith, you will acquit the defendant, or if upon this proposition you have a reasonable doubt in your mind, you will acquit the defendant."

We are not able to bring ourselves to agree that such complaint has merit. There were four men in the room where the homicide was committed. Two of them were shot and killed. That the commission of the homicide lay between one Boone and this appellant, seems unquestioned. The State's testimony indicated appellant's guilt. That of the defense pointed to Boone. The charge just quoted seems to fairly meet the issue thus made by the testimony and to properly tell the jury that if some person other than appellant did this killing, or if the jury entertained a reasonable doubt of such fact, they were to acquit.

The appellant asked a special charge on circumstantial evidence, which was refused. Comparison of this charge with that portion of the main charge in which the law of circumstantial evidence was submitted, reveals the fact that there is no difference between the two save that in the opening sentence of the special charge the jury are told that this is a case of circumstantial evidence, which statement is omitted from the main charge. An exception was also leveled at the failure of the main charge to contain the statement mentioned.

In Pennington v. State, 48 S. W. 507; Henderson v. State, 50 Texas Crim. Rep., 268, and Flagg v. State, 69 Texas Crim. Rep., 107, 153 S. W. Rep. 852, this court laid down the rule that when the charge on circumstantial evidence was otherwise sufficient, it need not in express terms state to the jury that the case was one of circumstantial evidence. We find nothing in Burkhalter v. State, 89 Texas Crim. Rep., 544, 184 S. W. Rep., 221, or Markham v, State, 233 S. W. Rep., 677, cited by appellant, holding contrary to this view.

We find ourselves in some perplexity because of the condition of the facts in evidence in this case. It appears without question that on the evening of the homicide four men procured two quarts of whisky and went to a room on the third floor of the Field hotel in

Houston for the purpose of drinking said liquor. As far as disclosed by the record the men were all friendly, two of them being strangers to appellant. Within a comparatively short time after going to the room two of said men named Smith and Walsh were killed. Boone, another one of the quartet, testified that after going to the room all the parties took a drink around and that he lay down on a bed went to sleep and knew nothing until he came to himself the following morning in the city jail. The officers who reached the scene of the homicide within a few minutes after its occurrence, testified that Boone was lying upon the bed with a pistol in his hand and on the floor lay Smith and Walsh dead, one being shot through the body and the other in the head. The appellant testified that after they went to the room they all took two or three rounds of drinks, and that Smith and Walsh began to scuffle with each other, after each asserted himself to be the best man. That their scuffling continued for some time, both waxing more and more vigorous in their assertions and efforts to prove themselves to be each a better man physically than the other. There seems no dispute over the fact that Smith had a pistol when the parties went into the room and that it was placed in a drawer of a dresser. Appellant asserts that during the argument between Smith and Walsh, the former went to the drawer and got the pistol and a little later struck Walsh with it and that it was knocked or thrown from Smith's hand on the floor. Appellant further states that Boone became irritated at the scuffling of Smith and Walsh and went and picked up the pistol and sat on the edge of the bed holding it in his hand. Appellant then states that he left the room, walking out of the only door into the hall, and that he had gone but a few steps down the hall when he heard a shot, and that he continued walking until he came to the steps, and as he went down the steps he heard another shot. He said he walked on out of the hotel, and it is without dispute that he was arrested somewhere in the neighborhood of the hotel and brought back. He seems to have been perfectly willing to discuss the matter, and made a number of statements about same to the officers, none of which were introduced in evidence against him upon this trial, and from which fact it would appear that he must have told substantially the same story throughout. Unfortunately for appellant, Mr. Belser who was then living and an officer in the army, had a room in the hotel down the hall from the one occupied by said parties, and he testified on the preliminary trial that his attention was attracted by a disturbance in the room occupied by the four men, and that he went down to the room shortly after 11 o'clock, and stated that the door was opened for him by Smith, and that appellant was sitting in a chair smoking, and that the other two men were on the bed, one holding the other down. Mr. Belser further testified that after apologizing to the men and saying

he thought they were soldiers, that he left and started back·toward his room but hearing a crash in the room where the men were, he turned and about this time a shot was fired. He said that no one came from the room just before or just after the firing of this shot, nor before he, Belser, entered his own room, which was near the elevator. A negro porter who was conveying icewater to another roomer on the same floor, said he met·and saw no one in the hall at or about the time of the first shot, and that he was in room 317, where he had conveyed the water, at the time the second shot was fired and that he peeped out of the door and saw no one leaving the room about that time. Two young men who were in the aviation service happened to be across the street from the hotel in question and testified that their attention was attracted by the struggling of two men in a room on the third floor, and that after said struggling men fell to the floor once or twice they saw a man with a mustache, smoking a pipe, approach the place where the men were scuffling or struggling upon the floor, and extend his arm, and each of said witnesses testified that he heard the report of a gun or pistol. One of them said he saw the smoke arise from just in front of the man with the mustache, and the other testified he saw the flash from apparently the same pistol. Both of these witnesses identified appellant as the man with the mustache. It seems beyond dispute that there was no other man in the room that night who had a mustache except appellant. The case presents no motive for a killing either by appellant or by Boone. The conflicts in the testimony and the different theories arising therefrom were for the solution of the jury, and whether this court would have decided the case as same was decided by them is not a question which should call for any reversal on our part. There was sufficient evidence before the jury which, if believed by them to be true, would have justified them in finding appellant to be the guilty party. It is not indispensable that a motive for a killing be shown before the question of guilt can be decided against one accused of a homicide.

Finding no error in the record for which we deem a reversal should be had, the judgment of the trial court will be affirmed.

*Affirmed.*

### ON REHEARING.

### June 29, 1923.

HAWKINS, JUDGE.—This is one of the most singular cases this court has been called upon to review. It gave us trouble upon the original submission, and we have again examined the facts closely since the motion for rehearing was filed. A more extended discussion of them would lead to no definite conclusion. An attempt to analyze them leads only to more complete confusion in seeking for

a possible motive for the killing, or to fix definitely in our minds the conviction that appellant fired the shots which resulted in the death of two men against neither of whom he had the slightest grievance. Of the four men in the room appellant appears to have been less than any under the influence of liquor. He was serenely sitting in a rocking chair smoking when the boisterous conduct of two of his companions attracted the attention of a guest in the hotel a few minutes before the shooting. He was not a party to such conduct and seemed to be taking no part in it. The case is one of circumstantial evidence. Some of the facts proven may be consistent with appellant's guilt, if motive be eliminated, others are compatible with his entire innocence. We have concluded that the evidence does not demonstrate his guilt to that moral certainty required before we can in good conscience permit the judgment of conviction to stand. Believing opportunity should be given for a more complete investigation of the matter to the end that any doubt may be cleared away we think our duty demands that a rehearing be granted, the order of affirmance be set aside, and the cause now reversed and remanded, and it is so ordered.

*Reversed and remanded.*